IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:24-cv-3432-PAB-NRN

MAC PIERCE, NIKI HUGHES,
SEAN HUGHES, & VALERIE CUMMING,
Individually and on Behalf of All Others Similarly Situated,

    Plaintiffs,

v.

PHOTOBUCKET INC.,

    Defendant.

**DEFENDANT PHOTOBUCKET.COM INC.'S AMENDED[1] MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Defendant Photobucket.com, Inc. ("Photobucket"[2]) respectfully moves to compel arbitration for Plaintiffs Mac Pierce, Niki Hughes, and Valerie Cumming ("User Plaintiffs") and Sean Hughes (collectively with User Plaintiffs, "Plaintiffs") pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 2 *et. seq*. (the "FAA"). The Terms of Use binding each Plaintiff

---

[1] Photobucket amends its Motion to Compel Arbitration (ECF 19) to reflect an earlier account creation date for Ms. Hughes, which information was discovered through further investigation in response to Plaintiffs' request for information, and address the applicable California law resulting from the terms of use in effect on such creation date. Photobucket conferred with Plaintiffs' counsel, and understands this amendment will reset the deadline for any opposition.

[2] Photobucket's legal name is Photobucket.com, Inc.  Photobucket will move to amend the caption following conference with Plaintiff.

1

permitted Photobucket to amend the applicable Terms of Use on notice, leaving the Plaintiffs subject to individual arbitration under the amended Terms of Use effective as of July 22, 2024 (the "Amended Terms"). The FAA provides for a mandatory stay of proceedings upon application and finding that claims are subject to arbitration. The Court should grant Photobucket's motion to compel arbitration and stay proceedings pursuant to 9 U.S.C. §§ 3 and 4.

## STATEMENT OF CONFERRAL

Written notice of Photobucket's motion to compel arbitration was served on Plaintiffs on February 12, 2025, pursuant to 9 U.S.C. § 4. (Declaration of James Beard ("Beard Decl."), ¶ 2.) Pursuant to D.C.Colo.LCivR. 7.1(a), Photobucket conferred with counsel for Plaintiffs on February 17, 2025, and again on April 8, 2025, regarding the requested order compelling arbitration and the stay of arbitrable claims mandated by 9 U.S.C. § 3. (Beard Decl., ¶ 2.) Plaintiffs oppose the relief sought herein.

## FACTUAL SUMMARY

Photobucket offers an online service for digital photographs that allows users to store, organize, and share photos and videos (the "Photobucket Services"). When creating their accounts, every user agrees to Photobucket's Terms of Use, which govern the use of the Photobucket Services. (*See* Declaration of Scott Curry ("Curry Decl."), ¶ 4.) Each of the User Plaintiffs acknowledged that the Terms of Use may change frequently and agreed to regularly consult the Terms for changes. (*See* Curry Decl., ¶¶ 8, 13, and 17.) The Plaintiffs further agreed that continued *use* of Photobucket's services constituted acceptance of any revised Terms of Use. (*E.g., id.* ¶ 8 (October 2008 Terms [Pierce],

2

"***continued use of the Photobucket Services*** . . . signifies your acceptance of the revised Agreement"); *and see id.* ¶¶ 14 (Hughes) and 17 (Cumming).)

No later than July 23, 2024, the User Plaintiffs were sent (and received) an email regarding amendments to the Terms of Use (the "Notice Email" about the "Amended Terms"). (*See* Curry Decl., ¶¶ 10, 15, 19, 20 and 25.) The Notice Email prominently advised, in bolded letters, that the Amended Terms "includ[ed] new arbitration provisions" and that "[by] continuing to use the Photobucket services such as ***having us store your uploaded content***" the user consented to the updated Terms of Use:

> **Important Notice to Photobucket Users**
>
> We have substantially updated our Terms of Use and Privacy Policy, and we have created a new Biometric Information Privacy Policy (collectively "Agreements"). Please read the updated Terms of Use and Privacy Policy carefully as they contain important changes. Additionally, please review the new Biometric Information Privacy Policy . These changes take effect on **July 22nd**. By continuing to use the Photobucket services such as having us store your uploaded content, after July 22nd, you consent to the updated Terms of Use, the updated Privacy Policy, and the new Biometric Information Privacy Policy.
>
> We strongly urge you to review the Agreements in full. However, here are some highlights of the changes: Updated Terms of Use include:
>
> . . .
>
> - Updated procedures for resolving any disputes relating to your subscription and our services, **including new arbitration provisions.** Users who signed up before **July 22nd** will have the option to opt out of the arbitration agreement within forty-five (45) days from **July 22nd**. To opt-out of the arbitration provision click here.

(Curry Decl., Ex. E (excerpt, bolding in original, red annotation added) *and* ¶¶ 25-27.) The Notice Email further advised, in bolded letters, that users could "opt-out within forty-five (45) days . . . by deleting your account," and provided both a bolded link to start the opt-out process and an additional invitation to email support@photobucket.com to initiate the process directly as an alternative:

3

> If you do not agree with the updated Terms of Use, the updated Privacy Policy, and/or the new Biometric Information Privacy Policy, you can opt-out within forty-five (45) days of July 22nd by deleting your account. **Click here** to start the opt-out process or contact us at **support@photobucket.com**

(Curry Decl., ¶ 26, Ex. E (annotation added).) Photobucket also provided notification of the Amended Terms through other means, including through unavoidable landing pages and pop-ups on its website and through its mobile application. (*Id.*, ¶¶ 22-24 and 28.)

Each of the Plaintiffs was on inquiry notice to frequently review the terms of use for updates, and each User Plaintiffs further received the Notice Email. (Curry Decl., ¶¶ 10, 15, and 19.) Each User Plaintiff alleges they did not remove their photographs from Photobucket's servers as a basis for asserting claims in this litigation, and otherwise relied on the terms. (*E.g.,* ECF 1, ¶ 229 ("Plaintiffs are the owners of copyrighted photos that are stored on Photobucket's servers."); *id.* ¶¶ 31 and 193.). None of the Plaintiffs opted out within the 45-day period. (Curry Decl., ¶¶ 33-34.)

I.   **LEGAL STANDARD**

Under the Federal Arbitration Act ("FAA"), agreements to submit disputes to arbitration "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Where a dispute is brought in a district court despite a valid agreement to submit to binding arbitration, the FAA directs that the court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Id*. § 3. Use of the word 'shall' "creates an obligation impervious to judicial discretion" absent any indicated exceptions. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (citing *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947)).

"It is well established that '[f]ederal courts have a liberal federal policy favoring arbitration agreements,' and that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Spencer v. TICI LLC*, No. 22-cv-02464, 2023

4

WL 2806856, at *2 (D. Colo. Apr. 6, 2023) (quoting *Reeves v. Enter. Prods. Partners, LP*, 17 F.4th 1008, 1011 (10th Cir. 2021) (quotations omitted)). Under the FAA, a court is required to "compel arbitration pursuant to the terms of the parties' agreement if (1) a valid agreement exists and (2) the asserted claims are within the scope of that agreement." *Bedoy v. NBCUniversal Media, LLC*, No. 20-cv-02548, 2021 WL 601817, at *1 (D. Colo. Jan. 11, 2021) (citing 9 U.S.C. § 4). The party opposing arbitration bears the burden of showing that the arbitration provision is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000).

## II.     CHOICE OF LAW

In determining whether an arbitration agreement exists between the parties, courts should generally apply state-law principles that govern the formation of contracts to determine whether a party has assented to such an agreement. *See Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006). Photobucket's historic Terms of Use—including the terms in effect when the User Plaintiffs created accounts in 2007, 2008, and 2013 (collectively, "Initial Terms")—and the Amended Terms relevant to this Motion include provisions selecting California, Colorado, or New York for choice of law. (*See* Curry Decl., ¶¶ 7, 11, 15 *and* Ex. B (July 2006 Terms [N. Hughes], California), Ex. A (October 2008 Terms [Pierce], New York), Ex. C (August 2013 Terms [Cumming], New York), and Ex. D (Amended Terms, Colorado).)

Because the Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(d), the Court applies the conflict-of-law rules of the forum state—Colorado. *Kipling v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 1306, 1310 (10th Cir. 2014). "Any conflict of laws analysis begins, perforce, with a determination whether a conflict actually exists," as a choice-of-law analysis is only necessary if there is an outcome-determinative conflict of law. *Richardson v. Allstate Fire & Cas. Ins. Co.,* 637 F. Supp.

3d 1186, 1190 (D. Colo. 2022). The Amended Terms are binding on the Plaintiffs under each state's law, mooting any choice of law analysis. *Id.*

## ARGUMENT

A. <u>Each Plaintiff was Bound to Prior Terms of Use</u>

The Complaint concedes that each Plaintiff relied on and was bound to earlier versions of the Terms of Use. (ECF 1, ¶¶ 31 and 193.) It asserts that "Photobucket's user agreement itself protects the Plaintiffs[,]" and further that Mr. Hughes is a "third party beneficiar[y] of the contractual duties Photobucket is breaching" and relied on (and was thus familiar with) the provisions of Photobucket's Terms. (*See* ECF 1, ¶ 31 (all account holders "retain the protections of their prior contracts") and ¶ 193 (S. Hughes relied on Photobucket's contractual duties and was a third-party beneficiary), ¶ 108 ("brings claims for breach of the user agreement as third-party beneficiaries").)

A plaintiff may not, "while seeking to enforce [] duties and obligations under [an] agreement, at the same time argue that the provisions of that contract do not apply to [them]." *Parker v. Ctr. for Creative Leadership*, 15 P.3d 297, 298-99 (Colo. App. 2000) (citing *Lee v. Grandcor Medical Systems, Inc.*, 702 F. Supp. 252 (D. Colo. 1988) (third-party beneficiary must accept contract's burdens along with its benefits)); *e.g., Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F. Supp. 293, 301 (S.D.N.Y. 1997) ("[O]ur Court of Appeals . . . has stated that where a plaintiff 'is found to be a third party beneficiary to the [contract containing the arbitration clause], it may be proper for the district court to enforce the arbitration agreement against the [defendant].'"); *Carvant Fin. LLC v. Autoguard Advantage Corp.*, 958 F. Supp. 2d 390, 396-397 (E.D.N.Y. 2013) (noting "several district courts have held that a non-signatory third-party beneficiary suing for breach of contract is bound by an arbitration clause in the contract").

The terms of use in effect before the Amended Terms—and admittedly 'relied on'

6

(and thus agreed to) by each Plaintiff (ECF 1, ¶¶ 31, 193)—provided the terms would change over time and would be posted on the website, establishing constructive notice. *See infra,* Section II.B, at p.10. *Needleman v. Golden 1 Credit Union*, 474 F. Supp. 3d 1097, 1102-05 (N.D. Cal. 2020) (finding constructive notice where a user agreed to receive all important notifications in his online banking portal); *see also Macasero v. ENT Credit Union*, 533 P.3d 982, 991 (Colo. App. 2023) *reh'g denied* (June 8, 2023), *cert. denied,* No. 23SC492, 2024 WL 2034637 (Colo. May 6, 2024) ("*Macasero*"); *Wu v. Uber Techs., Inc.,* 186 N.Y.S.3d 500, 533-34 (N.Y. Sup. Ct. 2022).  The Plaintiffs agreed to and undertook the obligation to monitor the website to stay apprised of important disclosures. *Macasero*, 533 P.3d at 989 (a "reasonable person who elects to receive banking statements and other important notices and communications electronically 'would have understood this as an obligation to [view electronic notices] to stay apprised of important disclosures.'" (quoting *Needleman*, 474 F. Supp. 3d at 1104)). (Curry Decl., ¶ 13 (regarding terms for Ms. Hughes, "Photobucket.com may modify or terminate the Services from time to time, for any reason, and without notice… provided that when Photobucket.com does so, it will update these Terms of Service. You are advised to periodically check the website for changes in the Terms of Service."); *id.* ¶ 8 (Pierce) and 17 (Cumming).)

      B.     <u>Each Plaintiff Had Constructive Notice of the Amended Terms</u>

Contract formation is governed by an objective rather than subjective standard, leaving no requirement that a party correctly understood or even reviewed the terms presented by the offeror. *See Macasero*, 533 P.3d at 988 ("Colorado law recognizes that 'one generally cannot avoid contractual obligations by claiming that he or she did not read the agreement.'") (quoting *Loden v. Drake*, 881 P.2d 467, 469 (Colo. App. 1994)); *Wu v. Uber Techs., Inc.*, No. 90, 2024 WL 4874383, at *5 (N.Y. Nov. 25, 2024)

("*Wu (Appeal)*"); *Caballero v. Premier Care Simi Valley LLC*, 69 Cal. App. 5th 512, 518 (2021). Instead, courts consider whether the offeree was put on constructive notice of the contractual terms. *Wu (Appeal)*, 2024 WL 4874383, at *5 (applying New York law); *and see Macasero,* 533 P.3d at 989-90 (applying principles of constructive notice to arbitration agreements under Colorado law); *Needleman*, 474 F. Supp. 3d at 1103. Under New York law, courts find constructive notice where (1) terms are clearly and conspicuously presented, and (2) the terms are made available for review. *Wu (Appeal)*, 2024 WL 4874383, at *5. Colorado considers the same two elements, and additionally considers the parties' prior course of dealings. *See Macasero*, 533 P.3d at 991. Similarly, California considers whether a reasonably prudent user would have been aware of the terms and took an affirmative action to demonstrate assent. *Needleman*, 474 F. Supp. 3d at 1103-04.

The User Plaintiffs had actual and at minimum constructive notice of the implementation of the Amended Terms. The terms were clearly and conspicuously presented. Photobucket deployed a three-prong notification system to ensure registered users received notice and a sufficient opportunity to opt-out of the arbitration provision:

- *E-mail Notice to Users*: Most relevant to this Motion, Photobucket initiated an email campaign that sent notifications to the email addresses for every registered account on or around July 18, 2024 (the "Notice Email"). The Notice Email emphasized important updates to the terms, including in bolded typeface that (i) the terms included an arbitration provision, (ii) the terms would be effective for existing users if they continued using the services *after* a 45-day opt-out period, and that (iii) provided a prominent link to opt-out and initiate deletion of their account:



(Curry Decl., ¶ 25 (appearing below headline "Important Notice to Photobucket Users"; annotation added) and Ex. E.) The Notice Email included the above content at the top of the email, visible with minimal (if any) scrolling by the user. The same opt-out invitation was repeated at the end of the email, further including both an email link and an alternative invitation to contact Photobucket directly to initiate the opt-out process. (*See* Curry Decl., ¶26, Ex. E.)

- *Unavoidable Pop-Ups:* Photobucket implemented unavoidable pop-up messages on its website, ensuring that users who had not yet agreed to the terms would be expressly notified (and that agreement was required before accessing the site). (*See id.*, ¶¶ 22-24.) Users who followed the link in the Notice Email and other Photobucket emails were shown:

(*Id.*, ¶ 23.) Users attempting to login were also presented with a notification with an "I do not agree" option, which—if selected—provided a

page directing the user to delete their content and close the account (after providing an option to download their content).  (*Id.*, ¶¶ 24, 32.)

- *Application Notices:* Photobucket additionally deployed a notification in its mobile application. (Curry Decl., ¶ 28.)

In each of the foregoing methods, the nature of the change, the time required to make a decision, and the way to opt out of the arbitration clause are conspicuous, emphasized, and readily discernable to any reasonably prudent user.

These methods more than satisfied the process provided by Photobucket's earlier Terms of Use and thus satisfied the parties' course of dealing. For example, Mr. Pierce agreed and acknowledged that Photobucket "may modify or amend this Agreement without notice at any time and **such modification will be effective upon posting by Photobucket on the Site**," further agreeing and acknowledging that it "[was] important that you review this Agreement regularly to ensure you are updated as to any changes." (*See* Curry Decl., ¶ 7, Ex. A (emphasis added).) Ms. Hughes, for her part, agreed to similar language providing that "[b]y using the Services you agree to the Terms of Service set forth below **as they may be updated from time to time** by Photobucket.com, Inc." and that she should "periodically check the website for changes in the Terms of Service." (*See id.*, ¶ 11, Ex. B (emphasis added).) Finally, Ms. Cummings likewise acknowledged that the terms "can change[, and that Photobucket requested she] carefully read this document and [Photobucket's] other policies [and may] announce if any 'big' changes are made." (*See id.*, ¶ 15, Ex. C.) Posting the Amended Terms to the website (and providing explicit notice of same via pop-up notifications and emails) satisfied the contractual expectation and course of dealings of the parties to provide notice.

Finally, the Notice Email and related notice mechanisms demonstrably made the

terms, in full, available for review. (*See* Curry Decl., ¶24, Ex. E.) The Notice Email, for its part, included a bold, underlined, blue hyperlink to the Amended Terms in the first lines of the email. (*See id.*, Ex. E.) The unavoidable pop-ups also included conspicuous underlined links to the Amended Terms along with a bolded notice that continued use would constitute consent. (*See* Curry Decl., ¶¶ 23-24.)

In sum, Photobucket provided notice to each of the User Plaintiffs, and a reasonable time to opt-out. *See Macasero*, 533 P.3d at 991 (finding constructive notice of arbitration agreement based on (1) notice provided in manner agreed to and consistent with prior dealings, (2) conspicuous nature of notice such that reasonable person would have known about updates and process for opting out of arbitration agreement, and (3) easy access to terms by use of included hyperlinks); *Wu (Appeal)*, 2024 WL 4874383, at *5. *And see Macasero*, 533 P.3d at 987, 992 (finding notification including 30-day opt-out period provided constructive notice).

### C. The Plaintiffs Assented to and Are Bound by the Amended Terms

Because each Plaintiff is bound by the earlier terms of use through reliance on same, was subject to constructive notice in the manner agreed-to in such terms, and the Amended Terms were conspicuous and readily accessible, the Plaintiffs had notice of the Amended Terms. *Parker*, 15 P.3d at 298-99; *Borsack*, 974 F. Supp. at 301; *Macasero*, 533 P.3d at 991; *Wu,* 186 N.Y.S.3d at 533-34. The Plaintiffs have not opted out of the arbitration clause even as of this amended filing, and instead continued to "retain the protections of" or "rely" upon the contractual provisions of the agreement. (ECF 1, ¶¶ 31, 193; Curry Decl., ¶ 34.) *Macasero*, 533 P.3d at 991-92. As a result, the Plaintiffs assented to and are bound by the arbitration clause of the Amended Terms.

Further, the Plaintiffs had notice of the Amended Terms, and they assented to the new terms (including the relevant arbitration provision) by declining to opt-out. *See*

11

*Needleman*, 474 F. Supp. 3d at 1105 ("In light of the finding that Needleman did have constructive notice of the document, his failure to opt out of the agreement within the allotted time was sufficient to constitute assent.").

The User Plaintiffs further assented through their continued use of services. Where there is notice of the contractual terms or amendments (*see* above), Colorado, New York, and California law all consider the continued use of services sufficient to establish assent and form a contract. *See Macasero*, 533 P.3d at 990 ("Where an offeree does not have actual notice of certain contract terms, [they are] nevertheless bound by such terms if [they are] on inquiry notice of them and assent[ ] to them through conduct that a reasonable person would understand to constitute assent." (quoting *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019)); *Wu,* 186 N.Y.S.3d at 536 (finding [plaintiff's] argument that "continued use of [the services] after receiving the Arbitration Notice [did not bind plaintiff] . . . lack[ed] merit), *aff'd, Wu (Appeal)*, 2024 WL 4874383); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (users were deemed to have assented to the amended terms by their continued use where users were provided notice to registered email addresses that the terms were changing with a link to the new terms).

Here, each User Plaintiff alleges continued use of the Photobucket Services by, at minimum, continuing to store their photographs with Photobucket. Indeed, any assertion to the contrary in opposition would be fatal to the User Plaintiffs' asserted claims. In *Macasero*, the court concluded that "express and affirmative" consent was not required where the user was "constructively notified of the change; [] did not opt out; and [] continued to use [the] services, which, under the Notice of Amendments provision[, the user had] agreed would act as [] consent to any amendments to the agreement." *Macasero*, 533 P.3d at 992; *Wu*, 186 N.Y.S.3d at 536 (continued use of

12

services after receipt of arbitration notice bound plaintiff to arbitration agreement); *Needleman*, 474 F. Supp. 3d at 1105.

This objective manifestation of assent further binds the User Plaintiffs to the arbitration provision of the Amended Terms. The application of these basic tenets of contract law is not surprising, in further light of the User Plaintiffs' agreement to their respective Initial Terms. Each User Plaintiff agreed and acknowledged in their Initial Terms that continued use of the Photobucket Services (including the continued use following the opt-out period that serves as the foundational basis for the plaintiffs' claims) constituted acceptance of any revised terms. (*See* Curry Decl., Ex. A (Oct. 2008 Terms [Pierce]), Ex. B (July 2006 [Hughes]), Ex. C (Aug. 2013 [Cumming]).)

Through failing to opt-out of the arbitration provision despite constructive notice, each Plaintiff assented to the Amended Terms. Further, through agreement to the Initial Terms, each User Plaintiff agreed that continued use of Photobucket Services would constitute agreement to any updates to the Terms of Use. In the Complaint initiating this case, each User Plaintiff asserted that they retained images on their Photobucket accounts. The Plaintiffs assented to the arbitration provision through their failure to opt-out, and through ongoing use of the Photobucket Services.

D. <u>The Amended Terms Require Arbitration</u>

Section 14 of the Amended Terms, assented to by each Plaintiff as established above, compels arbitration of the claims (the "Arbitration Agreement"). Under the FAA, a court is required to compel arbitration pursuant to an arbitration agreement if (1) the agreement is valid, and (2) the asserted claims are within the scope of that agreement. *See* 9 U.S.C. § 4; *and Bedoy*, No. 20-cv-02548, 2021 WL 601817, at *1 (citing same).

The Amended Terms reflect a valid agreement to individual arbitration. Under the FAA, an arbitration agreement is presumed valid, and the party seeking to avoid

13

arbitration bears the burden of showing that the arbitration provision is invalid or does not encompass the claims at issue. 9 U.S.C. § 2 ("A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable"); *Green*, 531 U.S. at 91-92. The Amended Terms' waiver of any class action, whether in litigation or arbitration, is likewise enforceable. (Curry Decl., Ex. D, p.13 ("This will preclude you from bringing any class, collective, or representative action against Photobucket.") *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 238 (2013) (contractual waiver of class arbitration valid under FAA). This element is met.

E.  <u>This Matter Is Within the Scope of the Agreement</u>

The Plaintiffs' claims fall squarely within the scope of the Arbitration Agreement. As a threshold matter, the Arbitration Agreement provides that the Plaintiffs are precluded "***from bringing any class***, collective, or representative ***action against Photobucket***" or from participating in any such action brought by someone else. (Curry Decl., Ex. D, § 14 (emphasis added).) The Plaintiffs further "agree[d] that ***any dispute, claim or controversy*** arising out of or relating to … (b) your access to or ***use of the Services at any time***, whether before or after the date you agreed to the Terms of Use, ***will be settled by binding arbitration*** between you and Photobucket, and ***not in a court of law***." (*Id.* at 14.1 (emphasis added).) Each cause of action in the Complaint arises out of images uploaded to and stored on Photobucket's website by the User Plaintiffs and unavoidably "aris[es] out of [their] use of the Services" and reliance on same. *Id.* The Plaintiffs' claims fall within the scope of the Arbitration Agreement.

The Arbitration Agreement includes a limited exception, permitting certain classes of relief to be pursued in small claims court or through equitable relief. (*Id.* at 14.1.) However, none of these narrow exceptions apply, as they are limited to "actual or

14

threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights." (*Id.*) The Plaintiffs' claims arise out of *privacy* law, not intellectual property law, leaving them within the scope of the Arbitration Agreement. (*See* ECF 1, ¶ 1 *and* p.26 *et seq*.) None of the exceptions contemplated by the Arbitration Agreement apply.

### F. Proceedings Must Be Stayed

Section 3 of the FAA provides that, upon application by a party and satisfaction by the Court that the issues involved in the suit are subject to arbitration, the Court shall "stay the trial of the action until such arbitration has been held in accordance with the terms of the agreement." 9 U.S.C. § 3. Such a stay is mandatory. *See id.* ("[U]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, [the court] shall on application of one of the parties stay the trial of the action"); *and Lexecon*, 523 U.S. at 35 (use of the word 'shall' "creates an obligation impervious to judicial discretion" absent other indicated exceptions). As set forth above, the Plaintiffs' claims against Photobucket are subject to mandatory binding arbitration, leaving the same claims subject to a mandatory stay pending arbitration under 9 U.S.C. § 3. While mandatory, Photobucket further notes there is no discernable prejudice to any such stay under the FAA, as Photobucket is not licensing and has no current plan to license its archives for biometric analysis. (Curry Decl., ¶ 3.)

## CONCLUSION

Photobucket respectfully requests that this Court enter an order directing Plaintiffs to pursue their claims against Photobucket in individual arbitration and staying this action pending completion of arbitration.

Dated: April 11, 2025

Respectfully submitted,

*/s/ James Beard*

MERCHANT & GOULD, P.C.
Rachel Scobie
rscobie@merchantgould.com
150 South Fifth Street, Suite 2200
Minneapolis, Minnesota 55402
Telephone:   612.332.5300
Facsimile:    612.332.9081

Jonathan Berschadsky
jberschadsky@merchantgould.com
500 5th Avenue, Suite 4100
New York, New York 10110
Telephone:   212.223.7241
Facsimile:    612.332.9081

James W. Beard
jbeard@merchantgould.com
1801 California St., Suite 3300
Denver, CO 80202
Telephone:   303.357.1670
Facsimile:    612.332.9081

*Attorneys for Defendant Photobucket.com, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 11, 2025, a true and accurate copy of the foregoing document was served via ECF to all counsel of record.

<u>*/s/ Shannon Maney*</u>
Shannon Maney