**IN UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No. 1:24-cv-3432-PAB-NRN

MAC PIERCE, NIKI HUGHES,
SEAN HUGHES, & VALERIE CUMMING,
Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

PHOTOBUCKET INC.,

Defendant.

---

**DEFENDANT PHOTOBUCKET.COM, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS[1]**

---

Defendant Photobucket.com, Inc. ("Photobucket") respectfully replies to Plaintiffs' Response to Defendant's Amended Motion to Compel Arbitration and Stay Proceedings (ECF 32 ("Opposition" or "Opp."); *and* ECF 25 ("Motion" or "Mot."). Even if Plaintiffs deny actual notice—a denial not supported[2] on this record—constructive notice alone suffices under each version of the terms of use. Despite same, Plaintiffs contend Photobucket cannot prove they "actually knew about the [July 2024 Terms of Use] or arbitration agreement" (Opp., at 1), but fail to materially dispute the sufficiency of *constructive* notice or address the explicit language in the underlying terms of use that

---

[1] All emphasis added unless noted.
[2] Plaintiffs' denial of receipt of the Notice Email presents credibility concerns, as they ***described the email*** in their complaint, filed nearly three months before Photobucket filed a copy of the July 2024 email with the Court. *Compare* ECF 1, ¶179 ("these emails stated that if users did not take action by a certain date—for many users that date was July 22, 2024—Photobucket would treat them as having agreed to updates to the Terms of Use and to the new Biometric Policy") *with* ECF 25-7 [Exhibit E, Notice Email].

continued use of services following revisions constitutes assent. (Mot., at 12-13 ("each User Plaintiff alleges continued use of the Photobucket Services by, at minimum, continuing to store their photographs with Photobucket") and 2-3, 11; Amended Declaration of Scott Curry ("Amended Decl."), ¶8 [Pierce], ¶14 [Hughes]; Reply Declaration of Scott Curry ("Reply Decl."), Exs. F and G [Cumming].)

Plaintiffs dispute the state law that applies to the Amended Motion, stating in a footnote that "formation is likely governed by the law of Illinois and Iowa, where the Plaintiffs lived" at the time of the Amended Terms. (Opp., at 4 n.2.) But Plaintiffs concede in their opposition that they ***had*** entered into agreements with Photobucket and do not materially dispute[3] the content of such agreements, mooting any issue of initial formation. (Opp., at 6. *See* ECF 25-4 [Pierce], 25-5 [Hughes] *and* Reply Decl., ¶¶3-8 & Exs. F and G [Cumming], (collectively and individually, "Initial TOU").) The Initial TOU all applied California, Colorado, or New York choice of law. (Mot., at 5.) The law of Iowa and Illinois has no bearing on the issues, leaving Plaintiffs' reliance on authority from other Circuits of negligible persuasive value if not wholly inapposite.

## I. Plaintiffs Had Constructive Notice of and Assented to the Amended Terms

The User Plaintiffs claim they avoided notice of the revised July 2024 terms (the "Amended Terms"), characterizing Photobucket's emails as "spam" and suggesting they stopped reading *any* account-related emails. There is no need to resolve any denial of actual email notice, as the record establishes constructive notice of and assent to the Amended Terms through continued use of services. (Mot., at 11 *et seq*.) Rather than addressing this constructive notice, Plaintiffs argue they agreed to notice and assent only if they *accessed* the site. (Opp., at 7.) Plaintiffs ignore their duty to monitor the site for accounts-related updates and the plain language of the Initial TOU establishing

[3] Ms. Cumming's terms of use ("TOU") are discussed below at Section I.B.

assent through continued use of the *Services* (including hosting and storage of photographs) after a revision. (*E.g.,* Mot., at 12-13 (discussing same).)

### A. The Plaintiffs Had Constructive Notice

The User Plaintiffs argue they only agreed that use of the site after a modification would establish assent. But the Initial TOU established that revisions were effective *when posted to the site*. (*See* Mot., at 2 and 10 (quoting terms); Amend. Curry Decl., ¶¶ 8 [Pierce] and 13 [Hughes]; *id.* ¶17 and Reply Decl., ¶8 [Cumming].) A reasonable person would understand these terms required review of the *site* for changes, reinforced by the instruction to check for updates. *See Macasero v. ENT Credit Union*, 533 P.3d 982, 989 ¶24 (May 4, 2023) (subsequent history omitted); *id.* 993 (Johnson concurring) (defining applicable "reasonable person"). To paraphrase the court in *Macasero*:

> "[Plaintiffs] agreed to receive all [notifications] from [Photobucket on the website]. So both parties mutually understood that important notices would be conveyed in this manner. And when a member has consented to [website] notice of changes to their contract terms and the entire membership communications have been exchanged in that way, such course of dealing shows that a[] [website] notice was sent in the exact manner to which the parties had agreed."

533 P.3d at 989 ¶25. At bottom, the Plaintiffs "explicitly agreed to receive [notices of revised terms] through the website, and "so undertook an obligation to monitor [the website]" for such disclosures. (Opp., at 7 (characterizing *Needleman v. Golden 1 Credit Union*, 474 F. Supp. 3d 1097 (N.D. Cal. 2020).) Photobucket provided constructive notice of the Amended Terms on the site, as agreed under the Initial TOU. *Id.* ¶¶25-26.

### B. Each User Plaintiff Assented Through Continued Use

Each Plaintiff agreed that continued use of the *Services* (including storage and hosting) constitutes assent. **Pierce's** Initial TOU stated that "*continued use* of the

Photobucket ***Services***… *signifies your acceptance* of the revised Agreement." (Ex. A [Pierce], at ¶ 3.) **Ms. Hughes** similarly agreed through her Initial TOU to be bound by updated terms "*[b]y continuing to use…the **Services"*** and that Photobucket could change and modify the terms without notice. (Ex. B [Hughes], ¶2.) Plaintiffs also assert continued use of the site was required for **Cumming**'s assent. But in opposition to the Amended Motion, Plaintiffs provided a declaration that Cumming created her account in June 2010. (*And cf.* ECF 1, ¶110 (stating only that account was created "around 2010").) Both versions of the terms of use in effect in June 2010 stated that "continued use of the Photobucket ***Services*** after Photobucket posts a revised Agreement *signifies your acceptance of the revised Agreement*." (Reply Decl., ¶8; *id.* ¶¶5-7.)

In passing, Plaintiffs suggest that Photobucket accepted Pierce's rejection of the Amended Terms. (Opp., at 6 n.4.) The quoted language reveals nothing of the kind, and merely recites Photobucket's *understanding* of Pierce's preference: "I *understand* you prefer not to agree[.]" *Id.* Photobucket never accepted a retroactive rescission of Pierce's agreement to arbitration. Each User Plaintiff agreed the continued use of Photobucket's hosting and storage services established assent. Each alleged that their photographs were hosted and stored as of July 2024. Each assented to the Amended Terms by continuing use after receiving at least constructive notice.

### C. The Initial TOU Permit Revisions Including Arbitration Clauses

Plaintiffs contend that the Initial TOU failed to alert users that future revisions could include an arbitration provision, citing unpersuasive and distinguishable authority. They rely on *Burgardt v. Golden 1 Credit Union*, which distinguished over *Needleman v. Golden 1 Credit Union* by relying on *Badie v. Bank of America*. *See* No. C092637, 2022 WL 440842, at *7 (Cal. Ct. App. Feb. 14, 2022) (relying on *Badie*, 67 Cal. App. 4th 779, 786 (1998)). *Burgardt* is unpublished, noncitable under California Rule of Court 8.1115,

and has never been cited by another court.

*Badie* found the original agreement ambiguous as to the type of "terms" that may be updated—*i.e.* the contractual terms or the *financial* terms discussed in the agreement—and adopted the narrower view as a saving interpretation. *See Badie*, 67 Cal. App. 4th at 802-03. It therefore construed the notice provided as limited to potential changes in the *financial* terms. *See id.* at 802-04; *Macasero*, 533 P.3d at 991 (further distinguishing *Badie*). No ambiguity exists here: the Initial TOU provided Photobucket could "change" or "revise" terms without limitation, and no financial "terms" are provided.

*Badie's* holding has been expressly distinguished and criticized here in Colorado, as invalidating "a terms-of-service change through an elaborate—and frankly strained—argument that the word 'terms' in the relevant contract was ambiguous in the context of granting the bank discretion to 'change the terms,' and it heavily emphasized that the change at issue was the insertion of an arbitration clause, which affects the right to a jury trial under the California Constitution." *E.g., Flores v. Bank of Am., N.A.,* No. 18-CV-2527-WJM-KLM, 2019 WL 2470923, at n.5 (D. Colo. June 13, 2019).[4] In short, *Burgardt* and *Badie* dealt with financial services contracts and are distinguishable on their facts.

**D. The Initial TOU Did Not Limit the Scope of Revisions to Terms**

Plaintiffs rely on the Amended Terms' merger clause to argue that "the modification clauses only allowed Photobucket to 'modify,' 'amend,' or 'change' the existing agreements," not "supersede prior agreements." (Opp., at 7.) But the authority cited does not address "amendments" or "changes," nor support the claim that a "superseding" agreement falls outside the scope of a "modification." It simply states that

[4] California provides a constitutional right to a jury trial in civil cases, but in Colorado "there is no constitutional right to a trial by jury in a civil action." *Colorado Coffee Bean, LLC v. Peaberry Coffee Inc.*, 251 P.3d 9, 27 (Colo. App. 2010), *as modified on denial of reh'g* (Apr. 1, 2010). The Amended Terms set Colorado as the choice of law, and waiver is only reached if the Court finds assent to the Amended Terms. (*See* Ex. D, §13.8.)

a modification leaves *unaffected* provisions intact—not that it *must leave* provisions intact. *Compare Chavarria v. Bruce Nagel & Partners Architects, P.C.,* 230 A.D.3d 1286, 1289 (2024) ("modification of a contract results in the creation of a new contract between the parties, which supplants only the provisions of the original contract affected by the modification while leaving the unaffected provisions intact"), *with* Opp., at 8.

Even assuming a right to "modifications" did not permit a merger clause to integrate (and thereby supersede) prior versions, the Initial TOUs were not so limited. Each permitted "amendments," "revisions," and changes to the agreement, each of which include superseding agreements within their scope. *E.g., Saffire Corp. v. Newkidco., LLC*, 286 F. Supp. 2d 302, 304-305 (S.D.N.Y. 2003) (referring to agreement replacing original agreement via merger clause as "Revised Agreement"). (Exs. A [Pierce], F and G [Cumming] (Photobucket may modify, amend, and revise Agreement at any time); Ex. B [Hughes] (notice of potential for "changes"). The agreements set no limit on the scope of permitted revisions or changes. The arbitration clause is binding.

Finally, Plaintiffs argue that Photobucket had "already terminated the contracts between the parties" before posting the Amended Terms. (Opp., at 10.) But this argument confuses access limitations with contract termination. The Initial TOU permitted Photobucket to restrict access and suspend features without terminating the agreement. Ex. A [Pierce] and Exs. F and G [Cumming] ("Photobucket reserves the right… to deny, restrict, suspend, or terminate your access to all or any part of the Photobucket Services at any time"); Ex. B [Hughes] ("By using the Services you agree that Photobucket.com shall not be liable to you for any modification, suspension or discontinuance of the Services"). Throughout the opt-out period, Photobucket provided *hosting and storage* services, did not delete User Plaintiffs' content, and provided an explicit path to retrieve their photos and delete their accounts without penalty. (Reply

Decl., ¶13; Ex. D, § 3.6.2 [Amended Terms] (instructions for downloading images).) Photobucket did not terminate the agreements.

### E. The User Plaintiffs Manifested Assent

Plaintiffs' assertion that they made no manifestation of intent to be bound fails based on the express language of the respective Initial TOU. As established above, each User Plaintiff agreed that *continued use* of the Services would bind them to modifications to the terms of use. (*See* Section I.B, above.) This established a prior course of dealing dispositive as to the issue. *See Macasero,* 533 P.3d at 989-990.

Each point raised by Plaintiff to avoid assent through continued use is unavailing. (Opp., at 9 *et seq*.) Plaintiffs admit they were bound to Initial TOU. (Opp., at 10.) Because the Initial TOU establish that continued use constitutes assent (Section I.B, above), Plaintiffs' argument that they were not obliged to affirmatively opt out fails. (*Id.* at 10. *Compare* Mot., at 12-13 (arguing assent through continued storage of images) *with* Opp, at 10 (discussing only assent through visiting site).) Plaintiffs' claim that any notice is void based on treating Photobucket emails as 'spam' does not negate constructive notice generally or the agreed-upon notice through the website. (*See* Opp., at 11.) *And see Needleman*, 474 F. Supp. 3d at 1104 ("[some]] customers likely do put routine monthly statements into the junk mail pile without ever opening them, but this cannot be considered the expected behavior of a reasonably prudent offeree.")

Plaintiffs' residual points suggest Photobucket terminated the subject accounts before the effective date of the Amended Terms. (Opp., at 10-11.) But Plaintiffs provide no evidence that the User Plaintiffs were subject to notices of account deactivation, much less termination of their *agreements*. In February 2023, free user accounts were restricted—<u>not</u> terminated—maintaining the status quo but limiting the ability to interact with the account other than to download their content without subscribing. (Reply Decl.,

¶¶10-12.) While the User Plaintiffs did not transition to paid accounts, they concede that Photobucket continued providing photo storage services. (Opp., at 11-12.) The Initial TOU delineated between modification, suspension, and termination of the accounts. (*See* Ex. A [Pierce] ("Photobucket [may] deny, restrict, suspend, or terminate your access to all or any part of the Photobucket Services"); Ex. F and G [Cumming] (same); Ex. B [Hughes] ("Photobucket.com may modify or terminate the Services [.]"). Limited restrictions placed on *full access* did not terminate the *agreement.*

Plaintiffs' final argument—that Photobucket's continued storage photos was not "continued use"—likewise fails. Photobucket did not hold the images hostage, and the Amended Terms *explicitly provided a path* to download images. (*See* Ex. D, §3.6.2 ("If you notify us [within forty-five days] at support@photobucket.com, ***we can provide you a temporary login so that you can download your Content***." (original emphasis removed, emphasis added).) Plaintiffs received constructive notice and assented to the Amended Terms by continuing to store content after the forty-five-day period expired.[5]

### F. Sean Hughes Is Bound to the Arbitration Agreement

Plaintiffs do not meaningfully dispute the well-established principle that a third-party beneficiary—or *any* party—that relies on terms in a contract is also bound to the balance of its terms. *See Parker v. Ctr. for Creative Leadership*, 15 P.3d 297, 298-99 (Colo. App. 2000) (third-party beneficiary must accept contract's burdens along with its benefits, compelling arbitration). (Mot., at 6 (same).) Arguing around **Mr. Hughes**'

[5] Plaintiffs characterize the notification and opt-out process as an 'unconscionable' scheme. (Opp., at 12.) While not articulated as a basis to reject arbitration, the Tenth Circuit has "repeatedly held that contracting parties' incorporation of the AAA Rules into their arbitration agreement constitutes 'clear and unmistakable evidence of an agreement to arbitrate arbitrability.'" *Goldgroup Res., Inc. v. DynaResource de Mexico, S.A. de C.V.*, 994 F.3d 1181, 1191 (10th Cir. 2021); *Born v. Progrexion Teleservices, Inc.*, No. 2:20-cv-00107, 2020 U.S. Dist. LEXIS 145191, at *19 (D. Utah Aug. 11, 2020) (issue of unconscionability clearly and unmistakably referred to arbitrator by virtue of election of AAA Rules). (*And see* Ex. A, §14.2 (electing AAA Rules).)

assertion of contract claims, Plaintiffs misstate Photobucket's position. Mr. Hughes alleges reliance on the protections provided by the prior terms, but seeks to avoid the consequences of that reliance. Stated simply: Mr. Hughes is not permitted to selectively assert provisions against Photobucket while avoiding the attendant obligation (established by the same prior terms) to monitor the website for revised terms of use. *See id.* The law does not permit him to pick and choose which terms bind him now. *Id.*

### G. Plaintiffs Voluntarily Waived the Right to a Jury Trial

Plaintiffs argue that, even if they had notice of and assented to the revisions, they did not knowingly and voluntarily waive the right to a jury trial. Plaintiffs' authority does not reach their contention. Courts in the Tenth Circuit consider factors to determine waiver of a jury trial—including conspicuousness of the provision, the relative bargaining power of the parties, the sophistication of the parties, and the opportunity to negotiate—but the factors are not determinative. *E.g., PostNet Int'l Franchise Corp. v. Amercis Int'l, Inc.*, No. CIVA06CV00125 PSFBNB, 2006 WL 1775599, at *3 (D. Colo. June 26, 2006) (finding waiver even where clause was not subject to negotiation, provision was "as conspicuous as every other clause" (but not bolded, italicized, or otherwise highlighted), and the parties did not consult an attorney). Instead, the guiding principle is whether the waiver is unconscionable, contrary to public policy, or simply unfair. *Id.* (citing *Allyn v. W. United Life Assur. Co.*, 347 F. Supp. 2d 1246, 1252 (M.D. Fla. 2004).)

None of Plaintiffs' contentions demonstrate they did not knowingly and voluntarily agree to arbitrate. The Amended Terms, presented (as agreed) on the website and linked in the notice email, conspicuously provided that the parties would be waiving the right to a jury trial. (*Id.* §14.1.) The User Plaintiffs continued using Photobucket's services, and no Plaintiff exercised the opt-out clause within forty-five days. (Ex. D, §14.9.) Plaintiffs had the opportunity to negotiate, as they could opt-out from the

arbitration agreement. (*Id.* §14.9.) And Plaintiffs fail to show any defect in the bargaining process resulting from a "gross disparity in bargaining power." *See Butler v. AT&T*, No. 18-CV-01749-PAB-SKC, 2019 WL 13446993, at *5 (D. Colo. Mar. 18, 2019) (arbitration clause binding without proof of procedural inequities).[6]

### H. Plaintiffs' DMCA Claims Are Subject to Arbitration

The Amended Terms preserve the parties' respective rights to "injunctive or other equitable relief in a court … to prevent the actual or threatened … violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights." (Ex. E, §14.1.) Plaintiffs rely on "other intellectual property rights" to contend their claims under the Digital Millennium Copyright Act ("DMCA") are not subject to arbitration

In context, each of the rights preceding the catchall relied on by Plaintiffs is an individual *species* of intellectual property (e.g., patent, copyright, etc.), not a basis for liability *related* to such property rights (e.g., attribution of authorship). *And see Potts v. Ctr. for Excellence in Higher Educ., Inc.,* 908 F.3d 610, 615 (10th Cir. 2018) (doctrine of 'ejusdem generis' requires catchall phrase be interpreted consistently with specific terms). But "[t]he DMCA does not create a new property right for copyright owners." *Chamberlain Grp., Inc. v. Skylink Techs., Inc*., 381 F.3d 1178, 1204 (Fed. Cir. 2004). *And id.* at 1181 (DMCA is codified at 17 U.S.C. § 1201 *et seq*.); ECF 1, ¶¶227-245 (asserting claims under 17 U.S.C. §1202(b)). Because it does not create a property right, Plaintiffs' DMCA claims are not exempt from arbitration.

## <u>Conclusion</u>

The Court should grant Photobucket's motion to compel and stay litigation.

---

[6] In addition, Mr. Pierce and Ms. Cumming explicitly agreed to provisions waiving any jury trial when they created their accounts. Both users' Initial TOU includes a waiver of the right to a jury trial. Ex. A [Pierce TOU], at 5, "Disputes"; Ex. F, at 3 and Ex. G [Cumming], at 4 (same); *see also* Ex. C [Cumming], at 3, "Other Important Guidelines."

Dated: June 6, 2025

Respectfully submitted,

*/s/ James Beard*

MERCHANT & GOULD, P.C.
Rachel Scobie
rscobie@merchantgould.com
150 South Fifth Street, Suite 2200
Minneapolis, Minnesota 55402
Telephone: 612.332.5300
Facsimile: 612.332.9081

Jonathan Berschadsky
jberschadsky@merchantgould.com
500 5th Avenue, Suite 4100
New York, New York 10110
Telephone: 212.223.7241
Facsimile: 612.332.9081

James W. Beard
jbeard@merchantgould.com
1801 California St., Suite 3300
Denver, CO 80202
Telephone: 303.357.1670
Facsimile: 612.332.9081

*Attorneys for Defendant Photobucket.com, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 6, 2025, a true and accurate copy of the foregoing document was served via ECF to all counsel of record.

*/s/ James Beard*
James Beard